IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 07-cv-01207-WDM-MJW

SUNGHOON KIM,

    Plaintiff,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
MARY MISCHKE, District Director, United States Department of Homeland Security;
GERARD HEINAUER, Service Center Director, United States Department of Homeland Security, Lincoln, Nebraska; and
FEDERAL BUREAU OF INVESTIGATION,

    Defendants.

**ORDER ON MOTION TO DISMISS**

Miller, J.

Plaintiff Sunghoon Kim seeks to compel Defendants United States Citizenship and Immigration Services (USCIS), Mary Mischke, and the Federal Bureau of Investigation (FBI) to complete the security clearances required for resolution of his pending application for adjustment of status. Defendants filed a motion to dismiss (doc no 8) for lack of jurisdiction and failure to state a claim. Plaintiff filed a response but Defendants did not submit a reply. Oral argument is not necessary. For the reasons that follow, the motion will be denied.

Background

Plaintiff is a citizen of South Korea and resident of Denver, Colorado. On June 16, 2003, he filed an I-485 application with the USCIS to have his status adjusted to that of

lawful permanent resident. His I-140 visa, based on employment status, was approved October 3, 2003. According to evidence presented by Defendants, on June 26, 2003, USCIS made a request to the FBI for a background investigation, or "name check," of Plaintiff. Plaintiff made several requests for information about the status of his application but was told repeatedly that processing was delayed until the FBI's name check was completed. He sought assistance from his congressional representative as well, but that office did not obtain any other information or further action. On August 26, 2006, USCIS sent Plaintiff a letter requesting additional information and documentation, which he provided. He was informed several times throughout 2006 and 2007 that his case was delayed pending the name check. On June 8, 2007, he filed his complaint in this court, seeking mandamus relief to compel Defendants to adjudicate his petition.

Defendants move for dismissal of the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In particular, they claim that 8 U.S.C. §1252(a)(2)(B) deprives this court of jurisdiction to review the discretionary acts of the Defendants, which includes the adjudication and timing of the processing of Plaintiff's application.

## Discussion

The Defendants do not appear to dispute Plaintiff's contention that his petition would be ripe for adjudication but for the completion of the background check. Defendants present evidence in the form of affidavits about the background check process in general and explain that the FBI background check is complicated and time-consuming. Evidence is presented that name checks are done in order of receipt and that in fiscal year 2006 the

FBI processed more than 3.4 million name checks. Defendants contend that Plaintiff's name check is being processed in accordance with FBI procedures and that USCIS is unable to proceed to final adjudication of Plaintiff's application until the name checks are completed.

In his complaint, Plaintiff asserts jurisdiction under the mandamus statute (28 U.S.C. § 1361), the Administrative Procedure Act (APA) (5 U.S.C. § 701 *et seq.*), and the federal question statute (28 U.S.C. § 1331). Defendant contends that none of these statutes provide jurisdiction over this matter.

As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Defendants appear to challenge jurisdiction on both grounds, arguing that jurisdiction has been removed by statute and in the alternative that as a factual matter, the delay is not unreasonable. In a factual attack, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends; therefore, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1). *Id.* at 1003. However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.*

1. <u>Waiver of sovereign immunity</u>

I first address general waivers of sovereign immunity under the mandamus statute and the APA. Plaintiff can only establish jurisdiction over the United States if it waived its

sovereign immunity. *See, e.g., United States v. Sherwood*, 312 U.S. 584, 586 (1941). Although immigration law is exclusively federal, and 28 U.S.C. § 1331 grants the court jurisdiction over all "civil actions arising under the Constitution, laws or treaties of the United States," section 1331 will only confer subject matter jurisdiction where some other statute provides a waiver of sovereign immunity. *City of Albuquerque v. United States Dep't. of the Interior*, 379 F.3d 901, 906-07 (10th Cir. 2004).

The mandamus statute, 28 U.S.C. § 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Tenth Circuit has held that sovereign immunity does not bar an action under this statute. *See Trackwell v. United States Government*, 472 F.3d 1242, 1244-45 (10th Cir. 2007) ("[T]he 'application of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity.'") (quoting *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005)).

Similarly, the APA serves as a limited waiver of sovereign immunity. *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006). It provides: "A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA withdraws that waiver of sovereign immunity, however, if another relevant statute "precludes judicial review" or if the action is committed to the agency's discretion. 5 U.S.C. § 701(a)(1)-(2).

4

Accordingly, unless Congress has eliminated jurisdiction or withdrawn the waiver of sovereign immunity, or the action in question involves discretion, I conclude that immunity is waived under the APA and the mandamus statute and does not bar Plaintiff's action.

2. Jurisdiction Stripping Statute

Defendants argue that Congress has eliminated judicial review of the Attorney General's discretion to adjust the status of a non-immigrant under 8 U.S.C. 1255. The relevant statute provides as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). Defendants argue that the pace or timing of the Attorney General's decision is one "regarding the granting of relief" or is "any other decision or action" under this statute and, therefore, is not reviewable. As evidenced by the extensive case law cited by both parties, there is a considerable split of authority among district courts that have considered the issue under nearly identical facts as those presented here.

I conclude that under the plain language of the provision, section (i) does not apply,

5

as there is no "judgment" or decision granting or denying relief. See also Cao v. Upchurch, 496 F. Supp. 2d 569, 572 (E.D. Penn. 2007) ("we do not think that defendants' delay in addressing plaintiffs' petition can be fairly characterized as a 'judgment'"). Therefore, I turn to section (ii). This provision precludes court review of any action "authority for which is specified [by statute] to be in the discretion of the Attorney General or the Secretary of Homeland Security." See Duan v. Zamberry, Case No. 06-1351, 2007 WL 626116 at *2 (W.D. Penn., Feb. 23, 2007) (section 1252 "applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion.") (quoting Alaka v. Attorney General of the United States, 456 F.3d 88, 95 (3d Cir. 2006)). The extent that jurisdiction is removed thus depends on the scope of the discretion specified in the statute to rest with the Attorney General (or his designee).

8 U.S.C. §1255(a) provides that the status of an eligible alien "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." It is undisputed that no time frame is specified in the statute or governing regulations for when such a decision must be made.

I conclude that the *decision* of the Attorney General to grant or deny adjustment of status is a non-reviewable exercise of discretion but that the Attorney General, and thus

6

the USCIS, has a non-discretionary duty to make *some* determination, except under limited circumstances. I start with the plain language of the statute which removes jurisdiction from courts over actions where discretion is specifically vested in the Attorney General. Section 1255 clearly grants discretion to adjust the petitioner's status if statutory and regulatory requirements are met; however, the statute does not vest the Attorney General with discretion to refuse to adjudicate the petition. Moreover, I am persuaded by Plaintiff's argument that the imposition of a considerable mandatory adjudication fee implies that Congress intended that the Attorney General actually decide applications. *See* 8 U.S.C. § 1356(m) ("[F]ees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants."); 8 C.F.R. § 103.2(a)(1) (requiring payment of fee with application).

I also take note of a provision in the regulations that *requires* that a decision be rendered upon the request of an applicant, even if all requested evidence has not been collected. 8 C.F.R. § 103.2(b)(14) ("Where an applicant or petitioner does not submit all requested additional evidence and requests a decision based on the evidence already submitted, a decision shall be issued based on the record."). I agree with Plaintiff that it would be incongruous to hold that the government has a no duty to adjudicate a petition when all the requested evidence is in the record, but has such a duty when not all evidence is yet submitted.

My conclusion is further supported by a regulatory provision that specifies exactly when and how adjudication of immigration applications may be withheld. 8 C.F.R. §

7

103.2(b)(18) provides as follows:

> A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

If the Defendants had completely unfettered discretion to withhold processing or fail to adjudicate an application, such a detailed scheme governing who may make the decision to do so and how and when it will be reviewed would be unnecessary. I note that Defendants do not contend that adjudication of Plaintiff's petition has been withheld pursuant to this provision.

Given that Defendants have a non-discretionary duty to adjudicate the application,

I now turn to the question of the pace of the processing. Defendants argue that since there is no deadline for adjudication of adjustment of status petitions (unlike other immigration applications), the Defendants have complete discretion over timing. I disagree. There is no statutory provision expressly vesting the Attorney General with discretion over the timing of a decision or otherwise overriding general timing provisions, such as the APA, which require that agency decisions be made in a reasonable time. 5 U.S.C. § 555(b) ("with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) (party injured by agency may seek court review of agency action "unlawfully withheld or unreasonably delayed.").

Moreover, the Tenth Circuit has held that the failure to specify a deadline for action simply means that an agency is subject to the general reasonableness requirements of the APA. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999). Interpreting the APA in the context of a mandamus case, the Court noted that the language of the APA is mandatory. *See* 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."). "Through § 706 Congress has stated unequivocally that courts must compel agency action unlawfully withheld or unreasonably delayed." *Forest Guardians*, 174 F.3d at 1187. Moreover, a court may require an agency to take action upon a matter, without directing how it shall act. *Id.* at 1190. The absence of a statutory deadline within which to act is not dispositive. Under *Forest Guardians*, "if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions. . . a court must compel only action that is

9

delayed unreasonably." *Id.* "Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act." *Id.* Applying *Forest Guardians* here, the lack of an explicit deadline for a decision on a petition for adjustment of status, in combination with the lack of a specific grant of discretion over the timing of the adjudication, means that the Attorney General is subject to the APA general timing requirements and has a non-discretionary duty to render a decision within a reasonable time.

In addition, Defendants' interpretation would mean that the Attorney General could leave applications pending indefinitely; I disagree that the jurisdiction stripping provisions can be read so broadly, particularly in light of the detailed statutory and regulatory scheme governing the process. Accordingly, I join those courts that have held that 8 U.S.C. §1252(a)(2)(B) does not bar review of the Defendants' non-discretionary duty to adjudicate a petition within a reasonable time. *See, e.g., Wang v. Chertoff,* No. C07-154RAJ, 2008 WL 681839 (W.D. Wash. Mar. 7, 2008) (noting that although no circuit court of appeals has yet addressed the issue, it appears that the majority of district courts have reached this conclusion); *Duan, supra,* at *14 ("I reject the argument that [the government's] discretion regarding the outcome of an adjustment application – versus the timing of its processing – precludes judicial review here."); *see also Cao, supra,* 496 F. Supp. 2d at 573 (section 1255 places the decision of whether to adjust status in the discretion of the Attorney General but "it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely"

10

and citing cases for proposition that Attorney General has a non-discretionary duty adjudicate the petition); *Aboushaban v. Mueller,* No. C. 06-1280 BZ, 2006 WL 3041086 (N.D. Calif., Oct. 24, 2006) (relying on regulations and APA to conclude that government has non-discretionary duty to adjudicate application within a reasonable time); *see also Kim v. Ashcroft,* 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) (the government "simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); *Bartolini v. Ashcroft,* 226 F. Supp. 2d 350, 353 n. 3 (D. Conn. 2002) (immigration agency "does not have discretion as to whether to adjudicate an adjustment of status application"); *Yu v. Brown,* 36 F. Supp. 2d 922, 931 (D.N.M. 1999) ("The fact that INS has discretion in the ultimate decision whether to grant [lawful permanent resident] status is simply irrelevant to the question of whether it has discretion to refuse to act on Plaintiffs' applications.")

3. Application of the APA and mandamus statute

In the alternative, Defendants argue that Plaintiff may not pursue his claims under either the APA or the mandamus statute because both require as an element the existence of a non-discretionary duty owed by the agency or official to the Plaintiff. As discussed above, I have concluded that the Defendants do not have complete discretion over the timing of their processing of Plaintiff's application and background check, but rather must do so within a reasonable time.

Many of the cases cited by Defendants in support of their position also directly or indirectly apply a reasonableness requirement to the USCIS's adjudication of an adjustment of status petition, but dismiss the complaint on the grounds that the relevant

11

agencies are taking *some* action, which is sufficient under the circumstances. *See, e.g., Eldeeb v. Chertoff,* No. 8:07-cv-236-T-17EAJ, 2007 WL 2209231 (M.D. Fla., July 30, 2007) (holding that USCIS has a non-discretionary duty to act on an application for adjustment of status, a discretionary duty as to the pace of processing, and a non-discretionary duty to adjudicate an application; only if agencies are not making effort can court look further to see if pace is reasonable); *Liu v. Chertoff,* No. 07CV0005 BEN (WMC), 2007 WL 1300127 (S.D. Calif., April 30, 2007) ("As long as USCIS continues to make reasonable efforts to complete Plaintiffs' I-485 applications, the pace required to complete that process is committed to their discretion"); *Patel v. Chertoff,* No. 4:06CV01207 ERW, 2007 WL 1223553 (E.D. Mo. April 24, 2007) (since defendants were acting on plaintiffs' petitions, delay was not unreasonable); *Safadi v. Howard,* 466 F. Supp. 2d 696, 700-01 (E.D. Va. 2006) (noting possible jurisdiction in hypothetical situation where USCIS refused altogether to process an adjustment application or delayed so unreasonably as to be tantamount to a refusal to process the application, but holding that as long as agency was processing the petition, the pace was part of "action" and was therefore discretionary).

I decline to adopt a "reasonable efforts" standard here as the basis of determining jurisdiction or as the sole benchmark for reasonableness. Rather, I take direction from the Tenth Circuit, which has set forth several factors that I may consider in determining whether agency action has been unreasonably delayed and should be compelled to act within a court-imposed deadline, including: (1) the extent of the delay; (2) the reasonableness of the delay in the context of the legislation authorizing agency action; (3) the consequences of the delay; (4) administrative difficulties bearing on the agency's

ability to resolve an issue; (5) the complexity of the task envisioned by the court's remand order. *Qwest Commc'ns Int'l, Inc. v. Federal Commc'n Comm'n*, 398 F.3d 1222, 1239 (10th Cir. 2005) (citation omitted).

While I have evidence before me sufficient to make findings as to some of these factors, such as the extent and consequences of the delay, both of which are considerable, I conclude that there are significant issues of fact remaining before I can determine whether the Defendants' delay has been unreasonable. Dismissal of Plaintiff's complaint, therefore, is not appropriate, and further proceedings are required to determine discovery and other pretrial matters in order to make this determination.

Accordingly, it is ordered:

1.  Defendants' motion to dismiss (doc no 8) is denied.

DATED at Denver, Colorado, on March 18, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge